IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION and UNITED STEELWORKERS, LOCAL UNION 104, <br><br> Plaintiffs, <br><br> v. <br><br> ALCOA, INC., WARRICK OPERATIONS, <br><br> Defendant. | 2:12cv164 <br> **Electronic Filing** |

# **MEMORANDUM ORDER**

AND NOW, this 3rd day of September, 2013, upon due consideration of the parties' cross motions for summary judgment and the submissions in conjunction therewith, IT IS ORDERED that [20] plaintiffs' motion be, and the same hereby is, granted. Defendant shall comply with the award of the Arbitration Board: specifically, at Warrick Operations defendant shall cease and desist from enforcing the FML leave policy implemented in January of 2007 and shall return to the FML leave policy in existence at Warrick Operations (as it specifically was implemented) before the changes in the 2007 policy were put into effect; and

IT FURTHER IS ORDERED that [23] defendant's motion for summary judgment be, and the same hereby is, denied. The Clerk is directed to mark the case closed.

Review of an arbitration award is quite narrow. Akers National Roll Co. v. United Steel, Paper and Forestry, Mfg., Energy, Allied Industrial and Services Workers International Union, 712 F.3d 155, 160 (3d Cir. 2013); accord Major League Baseball Players Ass'n v. Garvey, 532

U.S. 504, 509 (2001) (same). The role of the court is not to review the merits of the decision or correct factual or legal errors. Dauphin Precision Tool v. United Steelworkers of America, 338 Fed. Appx. 219, 222 (3d Cir. 2009) (citing Major League Baseball Player Assoc., 532 U.S. at 509 and Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279 (3d Cir.2004)). Instead, for over sixty years the appellate courts have emphasized the very deferential role that courts have in reviewing arbitration awards arising out of labor disputes. Pennsylvania Power Co. v. Local Union No. 272 of the International Brotherhood of Electrical Workers, AFL-CIO, 276 F.3d 174, 178 (3d Cir. 2001); accord Akers National Roll Co., 712 F.3d at 164-65 ("The *sine qua non* of judicial review of an arbitration award is a heavy degree of deference to the arbitrator."). This deferential role ensures that "the federal policy of encouraging arbitration of labor disputes is not subverted by excessive court intervention on the merits of an award." Pennsylvania Power Co., 276 F.3d at 178 (citing United Steel Workers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960)).

The federal policy of encouraging arbitration of labor disputes essentially has given rise to "a strong presumption in favor of the [arbitrator's] award." Newark Morning Ledger Co. v. Newark Typographical Union Local 103, 797 F.2d 162, 165 (3d Cir. 1986). This presumption generally can be overcome "only where there is a manifest disregard of the [collective bargaining] agreement, totally unsupported by principles of contract construction and the law of the shop." Akers National Roll Co., 712 F.3d at 160 (quoting Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir.1969) and citing in support Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir.2005), Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 280 (3d Cir.2004), Exxon Shipping Co. v.

Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir.1993), and Virgin Islands Nursing Ass'n's Bargaining Unit v. Schneider, 668 F.2d 221, 223 (3d Cir.1981)).

These principles limit review of an arbitration award to a determination of whether it "draws its essence from the collective bargaining agreement." Five Star Parking v. Union Local 723, 246 Fed. Appx. 135, 139 (3d Cir. 2007). "[A] labor arbitrator's award does draw its essence from the collective bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." Akers National Roll Co., 712 F.3d at 160 (quoting Ludwig Honold Mfg. Co., 405 F.2d at 1128).

The federal courts still have a significant role in the labor arbitration process notwithstanding the deferential standards governing review of an award. Matteson v. Ryder System Inc., 99 F.3d 108, 113 (3d. Cir. 1996). Nothing in those standards warrants the rubber stamping of the arbitrator's decision. Id. ("Effusively deferential language notwithstanding, the courts are neither entitled nor encouraged simply to "rubber stamp" the interpretations and decisions of arbitrators."). An award may be vacated where it is based on a "manifest disregard" of the agreement that is unsupported by contract law or the law of the shop. Pennsylvania Power Co., 276 F.3d at 178. "In other words, an award may be set aside when an arbitrator manifested a disregard of his authorization, and instead 'dispense[d] his own brand of industrial justice.'" Id. at 179 (quoting Newark Morning Ledger Co., 797 F.2d at 165); accord Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir.1996) ("we must enforce an arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and we may only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement.") (quoting News Am. Publ'ns, Inc. v. Newark Typographical Union,

Local 103, 918 F.2d 21, 24 (3d Cir.1990)). Manifest disregard of the law also provides a basis for disturbing an arbitrator's determination. United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995). No record support whatsoever likewise supplies a basis for invading the province of the arbitrator. Id. An award also may be set aside where there is "evident partiality" to one party that gives rise to "a clear showing of bias." Dauphin Precision Tool v. United Steelworkers of Am., 338 Fed. Appx. 219, 223 (3d Cir. 2009). Fraud, misconduct or violation of public policy are additional grounds for invalidation. Rite Aid of New Jersey v. United Food and Commercial Workers Union, Local 1360, 2011 WL 5920939, * 3 (D.N.J. Nov. 28, 2011).

In the absence of any manifest error or corrupting source, "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Akers National Roll Co., 712 F.3d at 160 (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (per curiam) (internal quotation marks and citation omitted)). Such errors, be they fact or law, are an inherent risk that comes with the benefits gained by arbitration. Id. (the benefits of fast results and reduced dispute-resolution expense "do not come without risk, and 'the possibility of receiving inconsistent or incorrect rulings without meaningful appellate review of the merits is one of the risks such parties must accept when they choose arbitration over litigation.'") (quoting Enter. Wheel, 363 U.S. at 599). And the benefits of arbitration would be eviscerated by permitting or encouraging lengthy and costly judicial review where the parties have bargained for just the opposite. Id.

Here, the parties present very divergent views of the substance and scope of the Board's Award. But a review of the Board's Findings and Decision as well as the specific award entered

4

in conjunction therewith remove any doubt as to the scope of the award and the grounds upon which it rests.

As is appropriate, the parties determined the scope of what the Board was to consider and resolve in the arbitration proceeding. See Major League Umpires Ass'n, 357 F.3d at 279 (an arbitrator's authority is defined by both the terms of the collective bargaining agreement and the scope of the issues submitted for resolution by the parties). Following a deferral of an unfair labor practice charge by the National Labor Relations Board, the Union raised with the Arbitration Board whether both (1) the Company's adoption of the new 2007 FMLA policy at Warrick requiring the substitution of vacation leave for FMLA leave and (2) the way in which that policy had been applied violated several sections of the collective bargaining agreement. Findings and Decision of the Board (Doc. No. 31) at 27-28. The Board determined that the adoption of the new 2007 FMLA policy at Warrick did not in itself violate the parties' agreement notwithstanding the fact "that at no time from 1993 until the Company instituted the changes at issue here in January 2007 did the Company ever take vacation time from Warrick employees, and count it against FMLA leave." Id. at 28. That practice directly deviated and conflicted with the language in a letter of understanding that permitted the Company to do so for all but one week of vacation, which letter had been incorporated into the "Master Agreement" in 2001 and 2006. Id. Thus, in resolving the first issue the Board determined that the practice of substituting vacation leave for FML leave did not in itself constitute a violation of the Master Agreement. Id. at 28-29.

Moreover, the Board determined that the practice at Warrick did not provide an adequate basis to find that the Company was precluded from applying vacation leave to FMLA leave. The Board reasoned that the matters before it were limited to the scope of whether the

5

implementation of the 2007 policy violated the parties' agreement and not whether the parties may have rights to further recourse before the National Labor Relations Board.  Id.  Notwithstanding the potential of such additional recourse, the pre-2007 practice at Warrick could not be used to overcome the clear language in the agreement authorizing the application of vacation leave to FMLA leave in general.  Nor were the matters submitted to the Board in a manner that permitted it to consider whether the practice at Warrick had become a "binding practice" or otherwise had status under the Master Agreement.  Id.  Thus, the Board concluded "that the Company did not violate the Master Agreement *simply by* instituting a policy that requires counting vacation leave against an employee's approved FML leave."  Id.  (emphasis added).

In contrast, the Board found that the manner in which the Company implemented the substitution of vacation leave for FMLA leave did violate the parties' agreement.  The Union had submitted a variety of grievances claiming that a number of ways leave was being substituted under the new 2007 policy violated the agreement, including violating a newly negotiated agreement at Warrick known as "vacation one day at a time" ("VODAT").  The Board did not consider and resolve each of the specific grievances founded on the impact the 2007 policy.  It did determine that "[t]he local agreement between the parties at Warrick on VODAT's has status under Article II of the Agreement, and therefore constitutes an agreement between the parties that is enforceable by [the] Board."  And it further determined that implementation of the 2007 policy resulted in a violation of the VODAT agreement and possibly other provisions of the agreement.  Id.  The Board thus concluded that while there are ways in which substituting vacation leave for FML leave could be accomplished without violating the agreement, and specifically the VODAT agreement, the parties' failure to reach agreement on those ways "did

6

not permit the Company to unilaterally impose a method of applying vacation leave against FML leave that violates rights, benefits and/or procedures contained in the VODAT agreement." Id.

In light of a finding that the 2007 policy violated the VODAT agreement, the Board concluded that the Company could not enforce the January 2007 changes to the existing FML leave policy. Pursuant to its remedial authority, the Board concluded "that the appropriate remedy for this violation at this time is a cease-and-desist order with regard to the new policy imposed in January 2007" and for the parties to return to the policy as it was implemented at Warrick before the 2007 changes. Id. at 31. It thus entered the following award:

> The grievance is sustained in part. Although the Letter of Understanding in the Master Agreement provides the Company with the authority to count vacation leave towards FML leave, the Company violated the local agreement regarding VODAT's by the way in which the Company applied that Letter of Understanding, when it instituted the changes to the FML leave policy in January, 2007. The Company shall cease and desist from enforcing the 2007 policy and shall return to the policy in existence before the 2007 policy was put into effect.

Id.

There is no ambiguity in this Award, nor can it be interpreted differently than its plain language dictates. It must be sustained for two simple reasons. First, the Board's arbitration award easily fits within the ambit of the dispute the parties submitted for resolution. The Board was requested to determine whether the very existence of the 2007 policy or the way in which the Company chose to implement it violated the agreement. The Board addressed these matters in a straightforward manner and did not stray from the boundaries of its authority in a manner that did violence to the Board's scope of authority. Compare Major League Umpires Ass'n., 357 F.3d at 279 (opining that the same deference that is accorded to an arbitrator's interpretation of a collective bargaining agreement must be accorded to the arbitrator's interpretation of the issue submitted and upholding the arbitrator's determination that the issues involved issues of "merit

and skill" and "possible abuse of discretion or exercise of discrimination or recriminatory animus" and not that of simple termination under the parties' CBA); Akers National Roll Co., 712 F.3d at 164 (deferring to the arbitrator's determination that the issue presented was whether a past practice had been established and violated).

Second, the Board's award draws its essence from the parties' agreement. The board determined that the VODAT's agreement at Warrick had status under the parties' CBA. It further determined that the 2007 policy violated the VODAT's agreement and thus the parties' CBA. It thus granted a remedy for that violation that restored the parties to their local practice under the CBA before the violation occurred. Such findings, conclusions and remedy were based on the rights and obligations under the parties' agreement. The Board did not interject any improper source of information into the record, bring to bear any improper animus or do violence to any particular provision, obligation or existing right under the agreement. Consequently, its findings, conclusions and remedy are the epitome of a disposition that draws its essence for the agreement.

Against this backdrop, defendant's supposition that the Board's award provides it with the unilateral freedom to implement the 2007 FML policy in any way that does not violate the local VODAT's agreement is misplaced. The Board determined that the local VODAT's agreement had become an enforceable part of the parties' agreement and that there was "sufficient evidence to establish that the way the Company has substituted vacation leave for FML leave has in some situations resulted in violation of the VODAT agreement and possibly other provisions of the collective bargaining agreement between the parties." Id. Based on these findings, the Board gave a remedy that it determined to be commensurate with the violation: "[t]he Company shall cease and desist from enforcing the 2007 policy and shall return to the policy in existence before the 2007 policy was put into effect."

8

Defendant's contention that construing the Board's remedy as anything more than an order restricting its ability to apply the 2007 policy to vacation time taken under the VODAT's agreement would result in the Board's decision being beyond the scope of its authority or jurisdiction is unavailing. An award of an arbitration panel is entitled to the same deference that must be given to the panel's determinations regarding the parties' agreement and the issues submitted for resolution. See Roadway Package System, Inc. v. Kayser, 257 F.3d 287, 578-79 (3d Cir.2001) ("We began by explaining that in reviewing a district court decision concerning the validity of an arbitration award, our assessment of the arbitration panel's actions is governed by the same standard that governed the District Court's review.") (citing Matteson, 99 F.3d at 112)).

Three basic principles guide an inquiry into whether an arbitration board's award exceeded its authority as conferred by the parties: "(1) a reviewing court should presume that an arbitrator acted within the scope of his or her authority; (2) this presumption may not be rebutted by an ambiguity in a written opinion; but (3) a court may conclude that an arbitrator exceeded his or her authority when it is obvious from the written opinion." Id. at 301.

Here, defendant does not highlight anything about the submissions of the parties that would undermine the presumption that the award was based on the issues submitted for resolution. Nor does it identify anything in the record to show it objected to the matters raised for resolution by the Union. To the contrary, it merely quibbles with Board's failure to give additional weight to the express rights it has under the Master Agreement and can insist upon in bargaining with plaintiff regarding an acceptable policy at Warrick. Such a disagreement about the proper scope of the remedy the Board could render does not suffice to displace the presumption that attaches to the award.

Furthermore, there is no question that the Board's determination was based both on the terms of the parties' agreement as developed at Warrick and the scope of the issues the parties chose to place before it. That defendant can construe the Board's findings and conclusions in a manner that supports a more narrow view of what is needed to remedy the violation does not place or make the remedy actually ordered by the Board beyond the scope of its authority. The Board was not asked to resolve each of the many grievances that were underlying the matters that had been submitted for resolution. The Board did have to consider all of the provisions of the agreement and fashion a remedy for the violation it found and the other potential violations it perceived in conjunction with the two central issues placed before it for resolution. While defendant has identified certain rights it retains under the agreement, its dissatisfaction with the Board's balancing of those rights with other rights and duties the Board determined to be implicated by the defendant's violation of the agreement merely highlights what is at base an alleged error of law, and such errors are beyond the scope of this court's review. See Brentwood Medical Assoc., 396 F.3d 240 ("While BMA may take issue with his contractual interpretation, this is not sufficient to justify vacatur of the award by this Court.") (citing Major League Baseball Players Ass'n, 532 U.S. at 509 ("if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.")); accord Akers National Roll Co., 712 F.3d at 165 (Alleged error in the arbitrator's balancing of the employer's expressed exclusive right to schedule work with other rights that had arisen under the parties' agreement and fashioning an unexpressed remedy of back wages and profit sharing for the found violation was one of law and as such did not amount to manifest disregard of the parties' agreement.); cf. United Parcel Service, Inc. v. International Broth. Of Teamsters, Chauffeurs, Warehousemen and

Helpers of America, 55 F.3d 138, 141 (3d Cir. 1995) (an award that apparently does not exceed the scope of the parties' submission will be affirmed notwithstanding the inferences that may be drawn from the accompanying opinion) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960) (Ambiguity in an opinion accompanying an award is not a reason for determining that an award is unenforceable as beyond the scope of the arbitrator's authority.).

In short, the Board did not stray from an interpretation and application of the parties' agreement and dispense its own brand of industrial justice. To the contrary, it reasonably interpreted the parties' agreement in conjunction with the matters submitted for resolution and crafted an award that was based upon a balancing of the parties' rights and obligations as defined by that agreement and the law of the shop. Consequently, its award must be sustained and enforced.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Nancy A. Spencer, Esquire
Nicole A. Stockey, Esquire
David J. Kolesar, Esquire

(*Via CM/ECF Electronic Mail*)